## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF COLUMBIA

_____

| | |
|---|---|
| **RICHARD MILLER** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 1:06-cv-01071-GK** |
| | ) |
| **MARK V. ROSENKER,** | ) |
| **Acting Chairman,** | ) |
| **NATIONAL TRANSPORTATION** | ) |
| **SAFETY BOARD,** | ) |
| | ) |
| **Defendant.** | ) |

_____)

### Amended Complaint[1]

Plaintiff, Richard Miller, by and through his undersigned attorneys, brings this action against the above named Defendant, and avers as follows:

### JURISDICTION

1.  This is an action alleging that Plaintiff Richard L. Miller was discriminated and retaliated against in the course of his employment in violation of his rights under Title VII of the Civil Rights Act of 1964 (hereafter "Title VII") and the Age Discrimination in Employment Act (hereafter "ADEA").

2.  Defendant also violated Plaintiff's rights under the Family and Medical Leave Act of 1993 (FMLA or the Act), 5 USC 6301 et. seq., and violated18 USC §1922 in relation to processing Plaintiff's Workers Compensation application.

---

[1] Plaintiff's Initial **Complaint** was filed with this Court on June 9, 2006.  Because defendant has not yet filed an answer in this action, Rule 15(a) of the Federal Rules of Civil Procedure allows plaintiff to file an amended complaint freely at this juncture.  Additional claims are added, pursuant to 29 CFR §1614.407.

3.      This Court has jurisdiction over his Title VII claims pursuant to 42 U.S.C. §2000e-
        5(f)(3), over his age discrimination claims pursuant to 29 U.S.C. §633(c) and over
        FMLA claims by 29 U.S.C. Sec.825.400(a)(2).


## VENUE

4.      Plaintiff worked in, and all acts and omissions occurred or failed to occur in, the
        District of Columbia. Accordingly, venue, pursuant to, *inter alia*, 2000e-5(f), lies
        within this judicial district.


## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Plaintiff, after seeking EEO counseling from May 2001 through December 2001,
        filed a formal EEO complaint on March 13, 2002 with Defendant's Equal
        Employment Opportunity (EEO) office, (Agency No. 100-AO-2011, EEOC Case
        Number 100-2003-0789X, OFO Appeal No. 01A44745), alleging discrimination
        and retaliation when it denied him promotion,  failed to provide the Plaintiff with
        an accurate Position Description, gave him a lowered performance evaluation,
        used improper and untimely rating factors, denied him the use of technology,
        office equipment and office space, removed his duties, and committed many
        other incidents as set forth herein. (See **Attachment** hereto).

6.      This case was processed through the EEOC's Hearing Office and later Office of
        Federal Operations.  A timely initial Federal Complaint was filed in this Court on
        June 9, 2006.  This Complaint amends that initial Complaint, involving the EEO

Complaint described above, and also includes the following allegations, from another EEO complaint.

7.    Plaintiff sought informal EEO counseling on or about November 16, 2005 and filed another formal EEO complaint on January 21, 2006 with the Agency's EEO Office, Agency Docket Number NTSB 2006-8.  The claims that were accepted by the Agency's EEO Office on February 13, 2006 included: Whether the Plaintiff was subjected to harassment based on sex, age, and retaliation when: (1) he was denied leave under the Family Medical Leave Act (FMLA); (2) His supervisor designated leave that the Plaintiff had previously taken as FMLA leave, but did not tell Plaintiff that he had done so until a later date; (3) Plaintiff's supervisor failed to provide Plaintiff with requested and required information regarding his rights under the FMLA.  Additionally, whether the Plaintiff was discriminated against because of age and sex when the Agency intentionally delayed action on Plaintiff's Voluntary Leave Transfer Program application until after January 3, 2006, thereby denying Plaintiff's donations from potential donors who retired on January 3, 2006.

8.    Additionally, the following claims were raised in the January 21, 2006 formal Complaint, but were improperly dismissed by the Agency's EEO Office on or about February 13, 2006 (See **Attachment** hereto).  1) Whether Plaintiff was discriminated against because of sex (male) age (DOB: 1949) and/or retaliation when the Defendant violated 20 CFR § 10.110 and 18 USC § 1922 by failing to forward Plaintiff's Notice of Occupational Disease and Claim for Compensation (Form CA-2) to the Office of Workers' Compensation Programs within 10 days of

3

its receipt; 2) Whether Plaintiff was discriminated against because of sex (male) age (DOB: 1949) and retaliation when the Defendant attempted to compel and induce him to take an offer to abolish his job by engaging in settlement negotiations with the Plaintiff with regard to his EEO Complaint that also involved terms related to his proposed removal and his Workers' Compensation claims; 3) Whether Plaintiff was discriminated against because of age, retaliation, and subjected to harassment when the Defendant transferred responsibility for the Agency's Purchase Card Program from the Office of the Chief Financial Office to the Office of Administration; 4) Whether Plaintiff was subjected to retaliation when the Defendant: (a) failed to include him in several meetings on a Department of Inspector General (DOT IG) audit that occurred on unspecified dates, and (b) not including him in the list of meetings the DOT IG provided; 5) Whether Plaintiff was discriminated against because of age (DOB: 1949) and/or gender and retaliation when it prevented him from participating in a DOT IG audit; 6) Whether Plaintiff was discriminated against because of retaliation when EEO Counselor Guest provided the contract EEO counselor assigned to counsel the instant complaint with the wrong date of initial contact with Guest; 7) Whether Plaintiff was discriminated against because of retaliation when Defendant made derogatory remarks about Plaintiff informed employees that Plaintiff was pushed out the door, pushed into the elevator and by not informing employees and outside people of the actual situation.; 8) Whether Plaintiff was discriminated against because of age and/or retaliation when Defendant: (a) did not respond to Congress about Plaintiff's complaints; or (b) delayed in responding to Congress.

9.     Over 180 days have passed since the filing of the **1/21/06 Complaint**, and neither a Report of Investigation (ROI), nor a notice of right to a hearing has been issued.  No final action has been taken and no appeal has been taken.

10.    The EEOC's regulations, 29 CFR §1614.407, allow for filing of this Complaint over all matters raised in the 1/21/06 Complaint, filed over 180 days ago, under these circumstances, as waiting for 180 days is deemed to be an exhaustion of administrative remedies by regulation:

> **1614.407 Civil action: Title VII, Age Discrimination in Employment Act and Rehabilitation Act.**
>
> A Plaintiff who has filed an individual complaint … is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:
>
> …
>
> (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;

11.    Plaintiff has exhausted all required administrative procedures and remedies.

### PARTIES

12.    Plaintiff Richard L. Miller (hereafter "Plaintiff" or "Miller") is male.  He was born in 1949.   He first engaged in protected EEO activity when he protested illegal discrimination in Spring 2001, contacted an EEO counselor regarding discrimination in that time period, and filed informal and formal EEO complaints in that time period.

13.    Plaintiff was at all times relevant to this Complaint, an employee of the National Safety Transportation Board where he has been employed since June 1999. For

most of that time, he was in the office of the Chief Financial Officer as a Financial Management Specialist, GS-14.

14. Plaintiff was at all times relevant to this Complaint, an "employee" within the meaning of 42 U.S.C. §2000e(f) (Title VII), 29 U.S.C. §630(f) (ADEA) and 5 USC 2105 (FMLA).

15. Defendant National Transportation Safety Board (hereafter "Defendant" or "NTSB") is an independent agency of the United States. It is capable of suing and being sued.

16. The Defendant is and was, at all times relevant to this Complaint, an "employer" within the meaning of 42 U.S.C. §2000e(b) (Title VII) and 29 U.S.C. §633a(a) (ADEA) and the FMLA.


**FACTS**

17.  Plaintiff is and was, at all times relevant to this Complaint, employed as a financial management specialist (GS-14) NTSB, Office of Chief Financial Officer, in Washington, D.C.

18. In March 2001 NTSB advertised a vacancy in the position of budget officer (GS-15-560) (Vacancy No. WA-TB-1-055).  The vacancy announcement closed in May 2001 and a female was selected in October 2001, although Plaintiff only discovered this fact in December 2001.

19. Although he met all the requirements for the position and was qualified for promotion to budget officer (GS-15-560), Plaintiff was initially determined not to

meet the minimum qualifications.  Later he was told that he was qualified but that another candidate had been selected.

20.    Given the Plaintiff's background and experience, he should have at least been included in the list of 34 qualified applicants for this position.

21.    Defendant interviewed female candidates before a referral certificate was issued and did not follow the crediting plan in the selection of a female candidate for the position.

22.    Normally, the direct supervisor of the filling position is not the one who decides which candidates are qualified for the vacancy.

23.    Defendant claimed that the Plaintiff did not meet one of the selective factors for the position, but the Plaintiff did meet all factors, as his extensive qualifications were well documented in his application.

24.    Defendant claimed that the reason the Plaintiff did not make the qualifying list was because he had not demonstrated supervisory, managerial, or leadership skill in the performance of Federal budget related work assignments, group projects or new initiatives.

25.    Plaintiff was in fact qualified to do all the functions of the position. He had been a budget analyst for approximately 13 years both with the Department of Transportation and the Congressional Budget Office. The Plaintiff was a Chief Operating Officer at Yadkin Lumber Company which demonstrated that he also had leadership and managerial experience pertaining to budget analysis, execution and approval.  Additionally, the Plaintiff was selected by the Secretary of Transportation to be one of a two man team to look into the operations of the

U.S. Coast Guard Search and Rescue Program.  In this capacity, he demonstrated leadership in a group project.  As Lead County Commissioner on Budget, Plaintiff oversaw the allocation and expenditure of federal funds and thereby demonstrated additional leadership experience dealing with federal budgetary matters.

26.    On or about October 22, 2001, Sylvia Livingston (female, age 50) was selected for the position.  The selectee came from a "Resource" shop at DOT rather than the "Budget Shop."  This selectee did not have "budget shop" experience, the very experience Defendant cited in finding Plaintiff not qualified.

27.    The Plaintiff began contacting the EEO office in or around November or early December 2001.  The Date of Selection for this position was October 23, 2001.  The Plaintiff, having contacted Defendant EEO office in November/early December of 2001, "filed a complaint" well within the 45 day period.  Defendant erroneously cited the contracting of the first counselor <u>meeting</u> with the Plaintiff as the first point of contact with the EEO.  The Plaintiff contacted the EEO <u>long before</u> the Director contracted a counselor meeting and, therefore, timely sought EEO counseling.

28.    In early 2001, Defendant announced a "Special Assistant Detail" with two vacancies at the GS-14/15 level.  Selectees would be detailed to the highest grade for which they qualified.

29.    Plaintiff applied for the position(s) but was not selected; the selections were never announced to Plaintiff's knowledge.

8

30.    Defendant apparently selected Barbara Czech (female, DOB 1966) for the Special Assistant Detail.

31.    Defendant apparently selected David Mayer (DOB 1964) for the Special Assistant Detail.

32.    From about March 3, 2001 to May 5, 2001, Czech and Mayer were in the Special Assistant Detail position.

33.    Plaintiff learned about the selection of Czech and Mayer to the Special Assistant Detail when the permanent advertisement for the position was issued on April 10, 2001 (WA-01-010).

34.    Defendant subsequently selected Czech and Mayer to the Permanent Special Assistant position on April 30, 2001, therefore, the Plaintiff did not learn about these selections until May 2001.

35.    Plaintiff contacted an EEO counselor or other individual logically connected with the EEO process within 45 days of learning about Czech and Mayer's selection to the Special Assistant Detail position, and within 45 days of learning about Czech and Mayer's selection to the Special Assistant permanent position.

36.    Czech did not even apply for the Special Assistant Position under WA 01-010 at the GS-14 position, but was selected for the Detail position and was then promoted to the GS-15 level on July 1, 2001.

37.    Plaintiff did not receive a Position Description for his position until April, 22, 2002. This Position Description was provided two years late, sent to Human Resources in December 2001 and then received by him in late April 2002.

38.   The duties described on the Position Description that the Plaintiff finally received were not an accurate portrayal of his duties.

39.   Several of the Plaintiff's duties were reassigned to younger and/or female employees or excluded from his Position Description so that they could be attributed to other employees to result in an accretion of duties or promotion of those employees to a higher grade.  For example, Plaintiff's duties as lead travel manager had been taken away from him and given to a younger female employee in the Office of Chief Financial Officer (OCFO).

40.   There were discussions with CFO Mitch Levine that Plaintiff would be assigned the duties of Administration Management Initiatives.  Instead, these duties and the oversight/liaison duties with the General Accounting Office (GAO)/ Department of Transportation Inspector General were removed and given to a younger employee (Ed Benthall, DOB 1971).

41.   Oversight responsibilities for which the Plaintiff was better qualified were assigned to a younger male employee (Dave Burgman) in order to justify this other employee's grade accretion.  These functions were then reassigned to a different younger employee (Benthall) once Burgman was accreted.

42.   The new assignments that were allocated to the Plaintiff were mostly functions previously performed by lower graded employees. Specifically, he was assigned all the post-travel audits, which were duties taken from Sam Callahan who was a GS-12 at the time.

43.   Plaintiff was responsible for the majority of the work done in the credit card area of the Office of the Chief Financial Officer.  He helped establish the programs

that audit purchase and credit card use by NTSB employees.  He also kept the records to assist managers in making decisions as to when purchase limits should raised.   He also notified supervisors if credit card usage should be examined more closely.  Additionally, he kept up to date and performed in an outstanding manner as bank liaison, working on the Federal Managers Integrity Act and as the travel manager.

44.    Because the Plaintiff was not provided with an accurate and up-to-date Position Description, it allowed the Deputy CFO/CFO to evaluate his performance arbitrarily and discriminatorily.

45.    The standards that were applied in rating Plaintiff's performance were only introduced at the end of the rating period.

46.    The "weights" assigned to the various job elements were only added after he had been rated on the elements.  This was done systematically by Defendant in order to downgrade his rating from the manner in which the former CFO had categorized it and enable other employees who were female and/or under-40 to receive higher summary evaluations, and therefore, higher performance awards and more favorable consideration for promotion opportunities.

47.    When the Plaintiff asked the Deputy CFO for a cell phone, he was told that there were none available.

48.    At least two people filling positions that he applied for and possibly others within the CFO office received cell phones after his request.  Cell phones were available.

49.  It was the Plaintiff's understanding that a signed form was sent to RE on the future distribution of laptops in the CFO Office and that he was given fairly high priority.  Yet, subsequently, younger employees who came after him received laptops before the Plaintiff.  A younger employee (Mary Wallace, DOB 1971) came after the Plaintiff and received a laptop before him.  When she later left the Agency, the RE IT head agreed to give the Plaintiff the laptop, but Deputy CFO Libera stepped in and prevented the Plaintiff from getting the laptop.

50.  The Plaintiff was the last CFO employee to be moved to the 6th floor, while several younger employees were provided space before him within the CFO Office.

51.  Younger non-Division Chiefs were provided with parking spaces when this was denied to the Plaintiff.

52.  Defendant gave the Plaintiff's operations functions for the NTSB Purchase Program to two younger employees (Keith O'Neill and Brian Moy) who, unlike the Plaintiff, had no agency credit card experience.

53.  Defendant locked Plaintiff out of emails/documents/ calendar/ addresses and other information including the Plaintiff's work products.  Plaintiff was hindered in his ability to keep up with NTSB/CFO/Credit Card Program/Financial events.

54.  Plaintiff was also denied access to emails, documents and other information relevant to his EEO cases, PIP, and Worker's Compensation claims.

55.  Defendant failed to include Plaintiff in several meetings on the DOT IG Audit, failed to allow and prevented him from commenting on the draft DOT IG Audit

before it was sent to Congress, and denied the Plaintiff his job of doing the FMFIA Risk Assessment.

56.    Defendant continually denied the Plaintiff phone access, access to training, access to Quicktime, and access to the official leave system.

57.    Defendant delayed the decision on Plaintiff's Voluntary Transfer Leave Program application.  Another employee, Diane Campbell's decision was issued and submitted to leave donors on January 3, 2006 when a lot of employees retired, whereas the Plaintiff's was not issued and submitted to leave donors until approximately January 12, 2006, after the majority of employees had retired (so they could no longer donate leave).

58.    Defendant selected a female instead of the Plaintiff for the position correlated with Vacancy Announcement 05-014A, Deputy Director, Office of Administration, GS-0301-15.  Plaintiff was denied an opportunity to advance to a GS-15 or higher position.

59.    Defendant excluded Plaintiff from meetings, tried to degrade and lessen the oversight in one of the better credit card programs by having two people do part of one job the Plaintiff had, ignored his recommendations and removed most controls.

60.    Defendant was required to forward Plaintiff's Workers Compensation Claim to OWCP within ten days. Defendant held Plaintiff's claim for at least 80 days.

61.    Defendant did not provide Plaintiff Family Medical Leave when it was appropriate.

62.     Plaintiff's supervisor did not tell the Plaintiff until much later that he had invoked
        FMLA leave when he finally did so.

63.     Plaintiff's supervisor backdated documentation regarding when he actually
        invoked the provisions of the FMLA leave.

64.     Plaintiff's supervisor also would not provide him copies of the leave request he
        turned in, denied him access to the leave system used by everyone else at NTSB
        and treated him differently than other NTSB employees using FMLA leave.

65.     FMLA information that the Plaintiff is legally entitled to was not provided to him
        prior to his return or removal.

66.     Defendant committed many more instances of retaliation following the filing of his
        EEO complaints, which are too numerous to list here, but all of which followed his
        protected activity and were related to his protected activity.


**COUNT I**
**Gender Discrimination – Non-Selection**

67.     Plaintiff realleges all facts set forth above as if set forth herein.

68.     Plaintiff was much better qualified than Ms. Livingston for the budget officer
        position.

69.     Plaintiff was not selected for the budget officer position because of his sex (male)
        in violation of Title VII of the Civil Rights Act.

70.     As the direct and proximate result of the acts and omissions of Defendant, as
        described above, Plaintiff suffered loss of pay and benefits and suffered
        additional damages, including, but not limited to, backpay, pension and

14

retirement benefits; diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other pecuniary and nonpecuniary losses.

**COUNT II**
**Gender and/or Age Discrimination – Non-Selection**

71.    Plaintiff realleges all facts set forth above as if set forth herein.

72.    Defendant's selection of Barbara Czech to the "Special Assistant Detail" in early 2001, was based upon her gender (female) and/or age (under 40).  Defendant's non-selection of Plaintiff was due to his gender (male) and/or age (over 40).

73.    Defendant selection of David Mayer to the "Special Assistant Detail" in early 2001, was based upon his age (under 40).  Defendant's non-selection of Plaintiff was due to his age (over 40).

74.    Czech was discriminatorily groomed for the GS-15 position, for which she did not apply or initially qualify, due to her gender (female) and/or age (under 40).

75.    Plaintiff was much better qualified than either Czech or Mayer for the Special Assistant Detail and Permanent positions.

76.    Plaintiff was not selected for the subject positions because of his sex (male) and/or age (over 40) in violation of Title VII and the ADEA.

77.    As the direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered loss of pay and benefits and suffered additional damages, including, but not limited to, backpay, pension and retirement benefits; diminished future earning capacity, emotional pain and

suffering, inconvenience, mental anguish, loss of enjoyment of life and other

pecuniary and nonpecuniary losses.


**COUNT III**
**Gender and/or Age Discrimination – Inaccurate Position Description, Lowered**
**Performance Appraisal, Removal of Duties, Hostile Work Environment**

78.    Plaintiff realleges all facts set forth above as if set forth herein.

79.    Plaintiff did not receive a position description for a lengthy period of time and,

when received, the Position Description was not accurate.

80.    Other, younger and/or female employees were given timely and/or accurate

position descriptions.

81.    Several of the Plaintiff's duties were reassigned to younger and/or female

employees or were excluded from his Position Description so that they could be

attributed to other employees to accrete them. For example, Plaintiff's duties as

lead travel manager had been taken away from him and given to a younger

female employee in the Office of Chief Financial Officer (OCFO).

82.    There were discussions with CFO Mitch Levine that Plaintiff would be assigned

the duties of Administration Management Initiatives.  Instead, these duties and

the oversight/liaison duties with the General Accounting Office (GAO)/

Department of Transportation Inspector General were removed and given to a

younger male employee (Ed Benthall).

83.    Oversight responsibilities for which the Plaintiff was better qualified were

assigned to a younger male employee (Dave Burgman) in order to justify this

other employee's grade accretion.  These functions were then reassigned to a different younger employee (Benthall) once Burgman was accreted.

84.   The new assignments that were allocated to the Plaintiff were mostly functions previously performed by lower graded employees. Specifically, he was assigned all the post-travel audits, which were duties taken from Sam Callahan who was a GS-12 at the time.

85.   Plaintiff should have been rated as "Outstanding," but was not.  Other similarly situated younger and/or female employees did not have lowered performance appraisals.  Also, Plaintiff's performance appraisal was lowered due to his EEO activity.

86.   Because the Plaintiff was not provided with an accurate and up-to-date position description, it allowed the Deputy CFO/CFO to evaluate his performance arbitrarily and discriminatorily. The standards that were applied in rating his performance were only introduced at the end of the rating period.  Furthermore, the "weights" assigned to the various job elements were only added after he had been rated on the elements.  This was done systematically by Defendant in order to downgrade his rating from the manner in which the former CFO had categorized it and enable other employees who were female and/or under-40 to receive higher summary evaluations, and therefore, higher performance awards and more favorable consideration for promotion opportunities.

87.   As the direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered loss of pay and benefits and suffered additional damages, including, but not limited to, backpay, pension and

retirement benefits; diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other pecuniary and nonpecuniary losses.


**COUNT IV**
**Retaliation – Inaccurate Position Description, Lowered Performance Appraisal, Removal of Duties, Hostile Work Environment**

88.  Plaintiff realleges all facts set forth above as if set forth herein.

89.  Defendant's delay in providing Plaintiff a Position Description, and Defendant's providing Plaintiff with an inaccurate Position Description was due to his EEO activity.

90.  Reassignment of Plaintiff's duties to other employees or the exclusion by Defendant of those duties from Plaintiff's Position Description was retaliation for his EEO activities.

91.  Defendant's decision to not assign him the duties of Administration Management Initiatives and the removal of Plaintiff's oversight/liaison duties with the General Accounting Office (GAO)/ Department of Transportation Inspector General were due to Plaintiff's protected EEO activities.

92.  Defendant gave Plaintiff new assignments which were mostly functions previously performed by lower graded employees due to Plaintiff's protected EEO activities.

93.  Plaintiff's performance appraisal was lowered due to his EEO activity.

94.  Defendant assigned Plaintiff "weights" to the various job elements after he had been rated on the elements due to Plaintiff's protected EEO activities.

95.    As the direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered loss of pay and benefits and suffered additional damages, including, but not limited to, backpay, pension and retirement benefits; diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other pecuniary and nonpecuniary losses.

**COUNT V**
**Discrimination on the Basis of Age, Gender and/or**
**Retaliation – Disparate Treatment**

96.    Plaintiff realleges all facts set forth above as if set forth herein.

97.    Defendant's denial of Plaintiff's requests for a cell phone and laptop; his moving Plaintiff last to the 6th floor; denying Plaintiff a parking spot; and the other items listed herein, constituted disparate treatment on the basis of age and/or gender, and/or reprisal for EEO activity.

98.    Defendant treated Plaintiff differently from similarly situated younger and/or female employee(s) in regard to FMLA.

99.    Other similarly situated employees outside of plaintiff's protected class were not subject to the same conditions of employment as Plaintiff.

100.   The disparate treatment by Defendant toward Plaintiff caused tangible harm to the plaintiff.

101.   As the direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered loss of pay and benefits and suffered additional damages, including, but not limited to, backpay, pension and

retirement benefits; diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other pecuniary and nonpecuniary losses.

**COUNT VI**
**Discrimination on the Basis of Age, Gender and/or**
**Retaliation – Hostile Work Environment**

102.  Plaintiff realleges all facts set forth above as if set forth herein.

103.  Defendant's denial of Plaintiff's requests for a cell phone and laptop; his moving Plaintiff last to the 6th floor; denying Plaintiff a parking spot; and the other items listed above, constituted creation and maintenance of a hostile work environment for Plaintiff on the basis of age and/or gender, and/or reprisal for EEO activity.

104.  Defendant subjected Plaintiff to harassment; ridicule; and different terms, conditions, and privileges of employment because of his age, gender and/or EEO activity.

105.  Plaintiff was subjected to an objectively and subjectively hostile working environment by Defendant.

106.  The hostile working environment was created and perpetuated by Defendant because of Plaintiff's age, gender and/or complaints of unlawful discriminatory activity.

107.  Other similarly situated employees outside of plaintiff's protected classes, and those who did not file complaints were not subject to the same conditions of employment as Plaintiff.

108.    As the direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered loss of pay and benefits and suffered additional damages, including, but not limited to, backpay, pension and retirement benefits; diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other pecuniary and nonpecuniary losses.

**COUNT VII**
**Violation of Workers Compensation Statute**

109.    Plaintiff realleges all facts set forth above as if set forth herein.

110.    Defendant violated federal regulations that require that an employee's Workman's Compensation Claim be forwarded to OWCP within ten days. Defendant held Plaintiff's claim for at least 80 days.

111.    Defendant violated 18 USC §1922 by withholding Plaintiff's report concerning Federal Employee's Compensation.

112.    Defendant's violations of the law harmed the Plaintiff.

113.    As the direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered loss of pay and benefits and suffered additional damages, including, but not limited to, backpay, pension and retirement benefits; diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other pecuniary and nonpecuniary losses.

**COUNT VIII**
**Family and Medical Leave Act**

114.    Plaintiff realleges all facts set forth above as if set forth herein.

115.    Defendant did not provide Family Medical Leave when it was appropriate.

116.    Defendant failed to inform Plaintiff of its decision to consider his medical disability absence as an FMLA absence.

117.    Defendant did not tell the Plaintiff until after the fact that it had invoked FMLA leave.

118.    Plaintiff's supervisor backdated documentation regarding when he actually invoked the provisions of the FMLA leave.

119.    Plaintiff's supervisor refused to provide him copies of the leave request he turned in, denied him access to the leave system used by everyone else at NTSB.

120.    Defendant refused to provide FMLA information to Plaintiff to which he was legally entitled.

121.    As the direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered loss of pay and benefits and suffered additional damages, including, but not limited to, backpay, pension and retirement benefits; diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other pecuniary and nonpecuniary losses.

**WHEREFORE**, Plaintiff prays this Court to:

1.    Grant judgment in his favor and against Defendant;

2.    Grant him declaratory and injunctive relief;

3.    Award him all lost pay and benefits and otherwise make him whole;

4.    Award him compensatory damages as permitted by 42 U.S.C. 1981a, in an amount to be shown at trial;

5.    Award him costs and attorneys' fees incurred in bringing and maintaining this action; and

6.    Grant him such other and further relief as justice may require.


### JURY DEMAND

Plaintiff hereby demands a trial by jury.


Respectfully submitted,

_____/s/_____
 Michael J. Snider, Esq. (MD Bar #24695)
Snider & Associates, LLC
104 Church Lane, Suite 201
Baltimore, MD 21208
410-653-9060 phone
410-653-9061 fax
mike@sniderlaw.com email

**NOTICE OF RELATED CASE:**

This case involves the same parties and similarly alleges discrimination in employment

(for discrete acts other than those described herein) as another case pending in this

Court. That case is captioned as Miller v. Rosenker, **Case No. 1:05-cv-02478-GK**.


           /s/
  Michael J. Snider, Esq. (MD Bar #24695)
  Snider & Associates, LLC
  104 Church Lane, Suite 201
  Baltimore, MD 21208
  410-653-9060 phone
  410-653-9061 fax
  mike@sniderlaw.com email