UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD L. MILLER, )<br><br>Plaintiff )<br>)<br>)<br>v.<br>)<br>MARK V. ROSENKER,<br>Chairman,<br>National Transportation<br>Safety Board,<br>)<br>Defendant. ) | Civil Action No. 06-01071<br>(GK) |

## DECLARATION OF ANH T.N. BOLLES

I, Anh T.N. Bolles, being of legal age and pursuant to the provisions of 28 U.S.C. § 1746, declare as follows:

1. I am the Chief of the Human Resources Division at the National Transportation Safety Board (NTSB; the agency) in Washington, D.C. I have worked in that position since May 28, 2006.

2. My responsibilities include administration of the agency human resources management program including performance and employee recognition, recruitment and placement, classification and position management, employee and labor relations, training and career development, employee benefits, and workers' compensation.



3. Richard L. Miller was employed at the NTSB from June 21,
1999, until June 30, 2006.  Mr. Miller initially
received a time-limited excepted appointment, but was
subsequently converted to a permanent career-conditional
appointment as a Financial Management Specialist GS-501-
14, in the agency's Office of the Chief Financial
Officer, on July 16, 2000.  He served continuously in
that position until his removal for unacceptable
performance on June 30, 2006.

4. On September 12, 2005, the agency issued Mr. Miller a
Notice of Proposed Removal.  On that same date he was
placed in a non-duty status with pay, i.e.
administrative leave, effective on the close of business
on September 12, 2005.

5. In a letter to the agency dated October 4, 2005, Mr.
Miller's family physician, Dr. Joseph Lamb, stated that
he was seen on that date for follow up of multiple
medical and psychological problems, and should refrain
working and take sick leave for the foreseeable future.
In response to that letter, Mr. Miller's supervisor
placed him on sick leave for family medical reasons,
effective on October 4, 2005.

6. Mr. Miller filed three Workers' Compensation claims
with the Department of Labor, Office of Workers'

2

Compensation Programs ("OWCP") during his employment with the agency as indicated below:

a. On October 24, 2005, he filed a claim for occupational disease, i.e., anxiety, depression, and stress, occurring during the period from December 2000, until the date the claim was submitted.  On August 21, 2006, OWCP denied the claim.  Mr. Miller has appealed that decision and requested a hearing before an OWCP representative.  As of this date, a hearing on the claim is pending.

b. On August 13, 2004, he filed a traumatic injury claim for a leg injury that occurred on July 28, 2004.  OWCP denied the claim on October 4, 2004. Mr. Miller filed for reconsideration of the claim on October 3, 2005, but OWCP denied his request for reconsideration claim on June 12, 2006.

c. On July 7, 2004, he filed a traumatic injury claim for a back injury that occurred on May 24, 2004. OWCP denied the claim on September 17, 2004. Mr. Miller filed for reconsideration of the claim on September 13, 2005, and OWCP denied the request on November 1, 2005.  He filed a second request for reconsideration on November

3

10, 2005, but OWCP denied the second request on
February 14, 2006.

I declare under penalty of perjury that the foregoing is true
and correct.

Executed on _26 Feb._, 2007.

Anh T. N. Bolles
Chief, Human Resources Division
National Transportation Safety
Board

4

# AFFIDAVIT

WASHINGTON
DISTRICT OF COLUMBIA

I, Bernard W. Moffett, (DOB: 04-07-48; gender: male), Human Resources Specialist, GS-201-14, National Transportation Safety Board (NTSB) make the following statement freely and voluntarily to Anne E. Anderson, who has identified herself to me as an EEO Contract Investigator for the NTSB, investigating a complaint of discrimination filed by Richard Miller, knowing that this statement is not confidential and may be shown to any interested party. I hereby solemnly swear/affirm:

1.     I have held my present position for approximately two years. I started with NTSB in July 1990. My first level supervisor is Thelma Brown, Deputy Chief, Human Resources Division. My second level supervisor is Lisa Love, Chief, Human Resources Division. Mr. Miller, a Financial Management Specialist, is employed in the Office of the Chief Financial Officer. This is an Office level organization in the NTSB and the head of this Office, the CFO, reports directly to the Chairman of the NTSB. As a Human Resources Specialist, I service approximately one half of NTSB organizations and this includes the Office of the Chief Financial Officer. I began servicing the Office of the Chief Financial Officer in July 2001. Prior to that time, another Human Resources Specialist serviced this Office.

2.     The EEO Investigator has advised me that the following bases and claims have been accepted for investigation:

A. Richard Miller alleges discrimination on the bases of his age and sex occurred when he was not selected for the positions he allegedly applied for that were advertised on the following vacancy announcements:
a. WA-TB-0-029, Program Coordinator (Knowledge Management), GS-301-15
b. WA-TB-0-030, Administrative Coordinator (NTSB Academy), GS-301-14
c. WA-TB-1-007, Chief Financial Officer, ES-501
d. WA-TB-1-055, Budget Officer, GS-560-15
e. WA-TB-1-065, Communications Specialist, GS-301-15
f. 01-010, Senior Management Analyst (Assistant Managing Director), GS-343-14/15, (two positions)
g. 01-020, Operations Manager (NTSB Academy), GS-301-14

B. Richard Miller alleges discrimination on the bases of his age and sex in that he has not received a classified position description that describes the duties of his current position.

C. Richard Miller alleges discrimination on the bases of his age and sex when, in January 2002, he received a performance evaluation of "Excellent" rather than "Outstanding" for the rating period that ended on May 30, 2001.

**A. Job Announcements and Positions Applied For**
a.     WA-TB-0-029, Program Coordinator (Knowledge Management), GS-301-15. I was not involved in processing this vacancy announcement. Based on my review



Initials 

## AFFIDAVIT

of this vacancy announcement file, it appears that this vacancy announcement was cancelled and the position was not filled.

b.  WA-TB-030 Administrative Coordinator (NTSB Academy) GS-301-14.
I was not involved in processing this vacancy announcement. Based on my review of this vacancy announcement file, it appears that this vacancy announcement was cancelled and the position was not filled.

c.  Announcement WA-TB-1-007, Chief Financial Officer, ES-501.
I was not involved in processing this Senior Executive Service (SES) vacancy announcement. Based on my review of this vacancy announcement file, it appears that Mr. Miller's application was rated "Not Qualified" by the Executive Resources Board (ERB) established to review these applications.

d.  WA-TB-1-055, Budget Officer, GS-560-15. I began working on processing this vacancy announcement after the panel had finished rating and ranking the applicants. Based on my review of this vacancy announcement file, it appears that Mr. Miller's application was rated "Not Qualified" by the panel established to review these applications. Unfortunately, due to a recent office move, several applications and related documentation are missing from the vacancy announcement folder for this position including Mr. Miller's application. However, regarding the Budget Officer position, I do recall meeting with Richard Miller in October 2001 to discuss his application for this position. We went over the ratings of the applicants and I explained to Mr. Miller that he was not rated qualified for this position because the panel determined that he had not demonstrated supervisory, managerial or leadership skill in the performance of Federal budget-related work assignments, group projects or new initiatives. This was a selective factor identified in the vacancy announcement that all the applicants had to meet in order to be rated minimally qualified for this position.

e.  WA-TB-1-065, Communications Specialist, GS-301-15
I was not involved in processing this vacancy announcement. I have no knowledge or information on the selection for this position.

f.  01-010, Senior Management Analyst, (Assistant Managing Director), GS-343-14/15, (two positions). I was not involved in processing this vacancy announcement. I have no knowledge or information on the selection for this position.

g.  01-020, Operations Manager (NTSB Academy), GS-301-14
I was not involved in processing this vacancy announcement. I have no knowledge or information on the selection for this position.

**B. Position Description**

I do not recall the exact date but Richard Miller did received his position description from his supervisor Don Libera, Deputy Chief Financial Officer. I believe the final version was give to him in May 2002. I reviewed this position description and it meets the classification standards for a GS-501-14 Financial Management Specialist.

**C. Performance Evaluation**

Initials _BColM_

## AFFIDAVIT

I was not involved in rating Mr. Miller's job performance. His current performance rating covers the time period June 1, 2000, to May 31, 2001. During this time, Mitch Levin was the Chief Financial Officer (CFO) and Don Libera was Acting CFO for approximately three months, from the time Mitch Levine left the agency until the current CFO, Steve Goldberg entered on duty. Mr. Levine, Don Libera, and Steve Goldberg all provided input into Mr. Miller's rating for this period.

The EEO Investigator has asked me to speculate as to why Richard Miller is having such a problem in trying to advance. She states he has applied for several positions yet has not been selected for any of them.

I was involved in the initial hiring of Mr. Miller on June 20, 1999, as an Expert on a one-year temporary appointment to assist in the management of the TWA Flight 800 Accident Reconstruction Project. NTSB had rented a facility from the city of Calverton, New York to complete the reconstruction of this accident aircraft. I believe it was costing the NTSB four million dollars a year to rent this facility. Mr. Miller was hired to manage on-site the contractor who was hired to move this wreckage to another less costly storage site. He also managed on-site a contractor who had been hired to film a documentary regarding this accident reconstruction project.

He also became involved in setting up and managing the NTSB's travel card program for NTSB employees. He set up the procedures for applying for this credit card and monitoring its use. And he developed a training program to instruct NTSB employees on its proper use. He also wrote the Board Order on this program. Mr. Miller also established the purchase card program that allows employees to purchase materials on-scene needed in conducting investigations. Eventually, CFO and Safety Board management was determined that this credit card program would require a full time employee to manage it and keep it running. A permanent position was advertised as a GS-14 Financial Management Specialist under vacancy announcement number WA-TB-0-044. Mr. Miller applied and was competitively selected for this permanent position. The effective date of his permanent appointment was July 16, 2000.

Mr. Miller's background does not indicate that he was involved in managing others in the day-to day operation of a Federal budget. In his Federal career before joining the Safety Board, he has been involved in financial and budget policy formulation and implementation. His current job at the Safety Board is to see that managers exercise due diligence regarding their management of employee use of the Government travel and purchase credit cards and to insure that no unauthorized charges occur. He does not have a staff that he manages or supervises. He provides direction and advice to Safety Board managers and employees on the purchase and travel card program. He does not feed financial information into a system that generates reports. A contractor is used to arrange travel for employees. Charges and purchases are recorded and tracked through the credit card company. The credit card company sends statements on charges/purchases to NTSB for Mr. Miller's review.

Initials _BGoM_

## AFFIDAVIT

I do not believe that Richard Miller's age and sex were the reasons he was not a highly rated applicant for these various positions and ultimately not selected. Mr. Miller was originally hired by the CFO at the time, Craig Keller. He has worked under Mitch Levine, and now he works for Steve Goldberg who is the current CFO. I believe Mr. Miller needs to prove himself to his current supervisors. He needs to show he can do more substantive financial management work. I know the CFO Office is short of staff, especially in the Budget area and there are budget and financial projects that need to be done. However, Mr. Miller has not volunteer to take on this work, to show what he can do and to put himself in a position to be more competitive for promotional opportunities.

I do not believe the fact he has filed EEO complaints are bases for his not being selected for promotional opportunities. He is not as competitive as other applicants in terms of academic training and work experiences. The skills requirements of the various positions Mr. Miller has applied for are separate and distinct. He either does not meet these specific skill requirements or he does not seem to have them to the same degree that other better qualified applicants have them. The staff of the Office of the CFO consists of Budget Analyst positions in the GS-560 series, Accountants in the GS-510 series, and Financial Systems Management positions also in the GS-510 series because they involve oversight of automated accounting systems. Mr. Miller's undergraduate degree is in English and his master's degree is in Public Administration. He appears to have some Federal budget experience from his prior Federal employment but this involved policy formulation and implementation rather than day-to-day operations.

I have read the above statement consisting of four pages and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

Signature: _Bernard W Moffett_

Date: _September 3, 2002_

Subscribed and sworn to before
me at _ATSB Headquarters_
on the _3_ day of _Sept._ 2002

_Witness Signature_

Initials _BWM_

**Miller Richard**

| | |
|---|---|
| `om:` | Moffett Bernie |
| `nt:` | Wednesday, October 24, 2001 10:20 AM |
| **To:** | Miller Richard |
| **Subject:** | RE: Questions |

Yes.  This is based on guidance from OPM regarding what can and cannot be released to applicants under FOIA and the Privacy Act.

-----Original Message-----
From: Miller Richard
Sent: Wednesday, October 24, 2001 10:01 AM
To: Moffett Bernie
Subject: RE: Questions


Bernie,
You had suggested going through the Freedom of Information Act.  Does your resonse include going this route.  Is this all the information I could obtain if I went through the Freedom of Information Act?

-----Original Message-----
From: Moffett Bernie
Sent: Wednesday, October 24, 2001 9:16 AM
To: Miller Richard
Subject: RE: Questions


Based on my review of the CFR regulations on the release of information under the Freedom Information and Privacy Acts found in 5 CFR Parts 294 and 297, we can provide you with the following information regarding your consideration for the position of Budget Officer, GS-560-15, MPP # WA-TB-1-055:

    1. A copy of the application you submitted for this position.

    2. A copy of the Certificate of Eligibles issued for this position with the names of all  the eligibles masked out except for the name of the person selected.

We cannot provide you with a copy of the crediting plan or the rating sheets used to evaluate your credentials or the credentials of other applicants for this position or the names of the panel members.  I can tell you that the selective factor that the panel felt you did not meet was Selective Factor #2:  "Experience that demonstrates supervisory, managerial or leadership skill in performance of Federal budget-related work assignments, group projects or new initiatives."

Let me know how you would like to proceed in this matter.

-----Original Message-----
From: Moffett Bernie
Sent: Thursday, October 18, 2001 8:13 AM
To: Miller Richard
Subject: RE: Questions


Can we get together today to talk about all this?

-----Original Message-----
om: Miller Richard
nt: Wednesday, October 17, 2001 1:38 PM
To: Moffett Bernie
Subject: FW:

$83$



Ernie,
Shawne told me on Monday that she was turning this back over to you?????  I would also
like to know the available ranking information for the recent Academy position.  Who is
the personnel person for the Academy? Richard

-----Original Message-----
From: Miller Richard
Sent: Friday, October 12, 2001 1:55 PM
To: Boddie Shawne
Subject: FW:


Shawn,
I don't seem to have received a response from this message.

-----Original Message-----
From: Miller Richard
Sent: Monday, October 01, 2001 1:59 PM
To: Boddie Shawne
Subject: FW:


Shawn,
As Bernie suggested, I will refer this question to you.  Richard
-----Original Message-----
From: Moffett Bernie
Sent: Monday, October 01, 2001 1:57 PM
To: Miller Richard
Subject: Out of Office AutoReply:


I will be out of the office on two weeks of annual leave starting on Friday, September
9th.  I will be back in the office on Tuesday, October 16th. If you wish,  you may
leave me a message and I will get back to you when I return to the office.   Or you can
contact Shawne Boddie who works with me in the HR Division for assistance.  Her phone
number is 202-314-6238.  Thanks.

84

2

**Miller Richard**

| | |
|---|---|
| **om:** | Libera Don |
| **ent:** | Thursday, October 25, 2001 4:28 PM |
| **To:** | Miller Richard |
| **Cc:** | Goldberg Steven |
| **Subject:** | RE: |

To clarify ... it was the more specific supervisory/managerial experience in a budget office that was lacking.

    ----Original Message----

| | |
|---|---|
| **From:** | Miller Richard |
| **Sent:** | Thursday, October 25, 2001 4:05 PM |
| **To:** | Libera Don |
| **Cc:** | Goldberg Steven |
| **Subject:** | |

Don--another thought. You seem to be saying in yesterday's meeting that you and Dave didn't think I had sufficient supervisory or mangerial experience for the Budget Officer's job. If this is a correct understanding, it disturbs me. I wish that you and Dave would look at my application again. I would think I have as much supervisory or managerial experience as any of the three Division Chiefs prior to them being in the present positions.



/2/

1



## NATIONAL TRANSPORTATION SAFETY BOARD
### Referral and Selection Certificate

Position to be filled: Budget Officer, GS-560-15

Location:    Office of the Chief Financial Officer, Budget Division, Washington, D.C.

Vacancy Announcement Number: WA-TB-1-055

Grade Level and Series of this Certificate: GS-560-15

The Selecting Official:  Steven Goldberg, Chief Financial Officer

Certificate Number: WA-TB-1-055                Date of Certificate:  09-05-01

The persons listed below are best qualified among all the eligible candidates for the position shown above.  This group was identified after thorough evaluation and comparison of candidates' qualifications against Office of Personnel Management standards and any special position requirements.  You are requested to consider the attached applications and arrange for interviews regarding the candidates of interest.  When a selection is determined, please indicate the name of the person selected in the space provided below.  This certificate is to be returned to the Human Resources Division no later than October 5, 2001.

Human Resources Specialist: _Bernard W. Moffett_

EEO Signature: _Paul D Mvt_

___

CANDIDATE SELECTED: _Livingston, Sylvia B._

Signature of Selecting Official: _(see signature on SF-52)_

Date of Selection: _____10-23-01_____

Certificate audited on _____ by _____

[] This certificate was used for selection.

[] This certificate was not used; Selection made from _





www.kponline.org

Copy for Richard Muller

KAISER PERMANENTE.
A HEALTH CARE TEAM AT YOUR FINGERTIPS (FOR MEMBERS ONLY)

GOVERNMENT
EXHIBIT
6

## ELIGIBLE STATUS CANDIDATES: NON-COMPETITIVE, GS-560-15

NAME              ID          SCORE      ACTION TAKEN
Livingston, Sylvia B
Chief, Resource Management Division, GM-301-15, DOT, WDC

## ELIGIBLE STATUS CANDIDATES: COMPETITIVE, GS-560-15

86

**\*NON-STATUS CANDIDATES ELIGIBLE FOR CONSIDERATION under the Veterans Employment Act of 1998: GS-560-15**

\*Rule of Three: A selection must be made from the highest three eligibles available on this certificate.

\*Veterans' Preference Act: You may not passover a preference eligible and select a non-preference eligible unless approval is received from OPM. NOTE: CPS, CP, EX, & TP are all preference eligibles.

Bernard W. Moffett
Personnel Management Specialist
09-05-01

87

05/13/02  15:13                                                    NO.398  P006/007

**National Transportation Safety Board**
Washington, D.C. 20594                                    EXHIBIT C1

Equal Employment Opportunity Office                        April 24, 2002

SUBJECT: Partial Acceptance of Formal Complaint of Discrimination

                    Mr. Richard Miller
                    1515 Arlington Ridge Road, Apt 304
                    Arlington, VA 22202

Dear Mr. Miller:

This office received your formal complaint of discrimination that was filed on March 13, 2002. The purpose of this memorandum is to notify you that your complaint has been accepted for investigation in part, and dismissed in part. The claims that I have accepted for investigation have been defined as follows:

   1. You allege discrimination on the basis of your age and sex occurred when you were not selected for the positions you allegedly applied for that were advertised on the following vacancy announcements:
      a. WA-TB-029
      b. WA01-010
      c. WA-TB-1-007
      d. WA-TB-1-055
      e. 01-010

   2. You allege discrimination on the basis of your age and sex in that you have not received a classified position description that describes the duties of your current position.

   3. You allege discrimination on the basis of your age and sex when, in January 2002, you received a performance evaluation of "Excellent" rather than "Outstanding" for the rating period that ended on May 30, 2001.

I have dismissed the following claim that was included in your formal complaint:

        Where you allege discrimination on the basis of your age and sex when you were denied use of a cell phone, laptop, etc.

Part 29 Code of Federal Regulations, 1614.107(a)(2) requires that an agency dismiss a claim that raises a matter that has not been brought to the attention of an EEO Counselor



GOVERNMENT EXHIBIT 7

-2-

and is not like or related to a matter that has been brought to the attention of an EEO Counselor. I have conducted a thorough review of the EEO Counselor's report that was prepared in your complaint and that review revealed that this claim was not addressed in that report. I have also contacted Mr. Chester Fisher, the EEO Counselor who conducted the informal inquiry in this instance and prepared the report, and he has also confirmed that you did not raise this claim of discrimination with him. Accordingly, I have dismissed this claim in accordance with 29 CFR 1614.107(a)(2), because it has not been brought to the attention of an EEO Counselor, and is not like or related to the claims that I have identified above. You are advised that there is no immediate right to appeal a partial dismissal of a complaint to the Equal Employment Opportunity Commission (EEOC). You are also advised that an EEOC Administrative Judge shall review this dismissal if you request a hearing on the remainder of the complaint, but that you may not appeal this dismissal until a final action is taken by the NTSB on the remainder of your complaint.

        If you believe the claims I have accepted in this complaint have not been correctly identified, please notify me in writing within 5 calendar days after you receive this letter. Specify why you believe the claims have not been correctly identified. If you fail to contact me, I will conclude you agree that the claims have been properly identified above.

        The accepted issues of your complaint will be assigned to an Investigator for formal investigation. Once assigned, you will be informed of the Investigator's identity and when the investigation is expected to begin.

                Sincerely,

                Fara Denise Guest
                Equal Employment
                Opportunity Director

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF COLUMBIA

| | |
|---|---|
| **RICHARD MILLER** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-2478 (GK)** |
| ) | |
| **MARK V. ROSENKER,** ) | |
| **Acting Chairman,** ) | |
| **NATIONAL TRANSPORTATION** ) | |
| **SAFETY BOARD** ) | |
| ) | |
| **Defendant.** ) | |

### Amended Complaint[1]

Plaintiff, Richard Miller, by and through his undersigned attorneys, brings this action against the above named Defendants, and any of its executives, employees, officers, agents and/or successors in support, and states, alleges, and avers as follows:

### JURISDICTION

1.     This is an action alleging that Plaintiff Richard L. Miller was discriminated against in the course of his employment in violation of his rights under Title VII of the Civil Rights Act of 1964 (hereafter "Title VII") and the Age Discrimination in Employment Act (hereafter "ADEA"). This Court has jurisdiction over his Title VII claims pursuant to 42 U.S.C. §2000e-5(f)(3), and over his age discrimination claims pursuant to 29 U.S.C. §633 c).

---

[1] Plaintiff withdraws from his Amended Complaint all allegations that were premature, as described in his Opposition to Defendant's Motion to Dismiss or for Summary Judgment, filed on July 21, 2006.



## VENUE

2.    Plaintiff worked in, and all acts and omissions occurred or failed to occur in, the

District of Columbia. Accordingly, venue, pursuant to, *inter alia*, 2000e-5(f), lies

within this judicial district.


## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.    Plaintiff filed a formal complaint of discrimination with the Equal Employment

Opportunity Commission (EEOC) on December 17, 2002.  Plaintiff's formal

complaint was revised and re-submitted to the EEOC on March 30, 2003,  In his

revised formal complaint, the Plaintiff alleged that he had been subjected to a

continuous pattern of reprisal for his participation in previous EEO activity in

January 2002.  In addition, April 17, 2003 and on May 6, 2003, Plaintiff submitted

written requests to amend his complaint to include like or related claims of

retaliation.

4.    Plaintiff's claim proceeded through the Administrative Judge and EEOC Office of

Federal Operations ("OFO") levels and a timely Complaint was filed in this Court

attaching the EEOC OFO Decision.

5.    Plaintiff has exhausted all required administrative procedures and remedies.


## PARTIES

6.    Plaintiff Richard L. Miller (hereafter "Plaintiff" or "Miller") is an adult male.  He was

born in 1949.

7.     Plaintiff was at all times relevant to this Complaint, an employee of the National

Safety Transportation Board where he has been employed since June 1999. For

most of that time, he was in the office of the Chief Financial Officer as a Financial

Management Specialist, GS-14.

8.     Plaintiff was at all times relevant to this Complaint, an "employee" within the

meaning of 42 U.S.C. §2000e(f) (Title VII.) and 29 U.S.C. §630(f) (ADEA).

9.     Defendant National Transportation Safety Board (hereafter "Defendant" or

"NTSB") is an independent agency of the United States. It is capable of suing

and being sued.

10.    The Defendant is and was, at all times relevant to this Complaint, an "employer"

within the meaning of 42 U.S.C. §2000e(b) (Title VII) and 29 U.S.C. §633a(a)

(ADEA)

## FACTS COMMON TO ALL COUNTS

11.    Plaintiff was continuously denied training opportunities in the SES candidate

development program and/or other similar administrative training opportunities.

12.    Plaintiff was removed from the CFO Management Team in August 2002, which

severely damaged his chances of promotion to a higher grade.

13.    On May 30, 2002, Plaintiff received a rating of "Excellent" instead of the

"Outstanding" rating that he deserved.

14.    The Agency delayed giving the Plaintiff a position description. He inquired about

the status of his PD during the last week in January, 2002 upon hearing in a staff

that the CFO PDs were sent to HR in December 2001, but Plaintiff did not receive

his PD until April 22, 2002 and when it was finally provided it was inaccurate and

did not include several of the duties that he was performing. Plaintiff was only given three days (until April 25, 2002 to review the PD.

15. Plaintiff was reassigned to report to the Deputy Director instead of the Chief Financial Officer.

16. Plaintiff's performance standards included absolute requirements and time constraints, and some of his weighted elements were changed shortly before the rating period, whereas other (female and/or younger) employees were not subjected to such deadlines or alterations. This occurred after Plaintiff's protected activity.

17. Plaintiff was assigned low level menial assignments after complaining about discrimination.

18. Plaintiff was not promoted to a GS-15 because several of his duties were erroneously attributed to another employee, whose position was then upgraded to a GS-15 instead of the Plaintiff's.

19. The Agency created new positions in order upgrade other employees to a GS-15, and failed to create opportunities for the Plaintiff to receive a promotion, despite his experience and abilities having made him better qualified than those who were selected.

20. Plaintiff was not informed of, and was denied, the opportunity to participate in several training classes that were held for the new financial management system, the Federal Financial System (FFS), whereas all other employees in the CFO office were informed of and provided this training. Additionally, the Plaintiff did

4

not receive copies of notebooks called Flashpoint or the User Guide for FFS that were provided for other employees.

21.   Plaintiff was denied the opportunity to participate in the planning of the Agency's new accounting system.  As a result of this exclusion, he did not receive the plaque and higher cash award that everyone who participated received.

22.   The Plaintiff was denied a laptop, whereas other employees, who were on the waiting list for a laptop after the Plaintiff, received one before him.

23.   The Plaintiff was verbally and physically harassed by another employee, Dave Burgman, whose aggressive behavior, particularly in July 2002 and January 2003.

24.   The Plaintiff was excluded from an agency-wide Financial Integrity Meeting for office directors. Several other CFO employees were informed of it and attended.

25.   The Agency took an unreasonably long period of time to consider providing an Alternative Work Day for the Plaintiff and he was the only employee not notified of and provided with the choice of working at home.

26.   All of the above allegations were raised in Plaintiff's EEO Complaint (Attachment 1).

27.   Many other discriminatory and/or retaliatory events occurred to the Plaintiff, all of which were raised in the EEO process and are incorporated herein by reference **(Attachment 1)**.

28.   Plaintiff reworked his EEO Complaint on March 20, 2003 **(Attachment 2)**.

29.   Plaintiff amended his EEO Complaint at least two times, one by email **(Attachment 3)**.

30. These allegations were accepted by the Agency as part of Plaintiff's EEO Complaint, for investigation (**Attachment 4**).

## COUNT 1: GENDER AND AGE DISCRIMINATION

31. On several occasions, the Agency, discriminatorily, created new positions for or promoted, female employees and younger employees instead of the Plaintiff, despite his superior qualifications and more extensive experience.  For example, the agency created a new position at the NTSB Training Academy in order to favor and reassign a female employee who had filed an EEO complaint, while his complaints were ignored and he never received a promotion irrespective of his stronger credentials.

32. Several of the Plaintiff's duties were erroneously accredited to a younger employee, David Burgman, and as a result he was promoted instead of the Plaintiff.

33. Plaintiff was denied training and professional development opportunities on several occasions as an act of discrimination and/or retaliation on the part of the Agency.

34. The other events that occurred, described above, which involved female employees as comparators constituted gender discrimination.

35. The other events that occurred, described above, which involved other employees below age 40, or substantially younger employees than Plaintiff, as comparators, constituted age discrimination.

36. Plaintiff was harmed as a result of the Agency's discrimination against him.

6

**COUNT 2:   RETALIATION FOR PROTECTED EEO ACTIVITY**

37.   Subsequent to Plaintiff complaining about discrimination, and subsequent to

Plaintiff's filing of an EEO complaint – which was protected activity – the Agency

retaliated against the Plaintiff, as described above.

38.   There was a nexus between the actions the Agency took against the Plaintiff and

his protected activity.

39.   Plaintiff was harmed as a result of the Agency's retaliation against him.


**Wherefore, Plaintiff prays he be awarded the following relief:**

a) A declaratory judgment that the conduct engaged in by the Defendant was a

violation of Plaintiff's legal rights.

b) An order directing Defendant to pay an award of back pay and fringe benefits with

interest and our front salary and benefits with interest to the Plaintiff

c) An order directing Defendant to pay an award of statutory compensatory

(pecuniary and non-pecuniary) damages up to the maximum permitted by the

statute in an amount to be determined at trial.

d) An order awarding liquidated damages.

e) An order directing Defendant to pay reasonable attorneys fees and costs of this

litigation, and

f) Such other and further relief as the Court may deem just

**Demand for Jury Trial:**

Plaintiff requests a trial by jury on all facts and any combinations of fact and law in this

case.

Respectfully Submitted,


_____/s/_____
Michael J. Snider, Esq.
Snider & Associates, LLC
Attorney for the Plaintiff
104 Church Lane, Suite 201
Baltimore, MD 21208
Phone: 410-653-9060
Fax: 410-653-9061

8

**Miller Richard**

To:                    D'Avella Denise

April 1, 2004

Denise,
The Agency had requested true copies. I attest that the documents supplied in complainant's respone to the Agency's
Discovery Rquest are true and not fake, cut and pasted, or changed. I am not giving up my origanls again. Emails are
copies of existing emails. If there are in questions on my documents, I will be please to allow you to inspect my copy in my
presence. If you need any other verification, please let me know.

Witiness/Notary                              Richard L. Miller        4/1/04

I _Richard Miller_ , hereby certify
that this is a true and correct copy of the original document.
_____ Signatory
District of Columbia : SS
Subscribed and Sworn to before me
this _1st_ day of _April_ , _2004_
_____ Notary Public, D.C.
                         ROSIE M. LETT
My Commission Expires ____ NOTARY PUBLIC DISTRICT OF COLUMBIA
                         My Commission Expires May 31, 2004

1

GOVERNMENT
EXHIBIT