UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD MILLER,

        Plaintiff,

                             *   Case No. 06-01071 (GK)

v.

MARK V. ROSENKER, Chairman
NATIONAL TRANSPORTATION
SAFETY BOARD

        Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIE, FOR SUMMARY JUDGMENT

Now comes Plaintiff, Richard Miller, pro se, moves to oppose the Defendant's Motion to Dismiss or in the alternate, for Summary Judgment, on the grounds of Declarations of Plaintiff, Charlotte Casey, Gwen Bracey. Further grounds for this opposition are set forth in the following Memorandum of Law.

Respectfully Submitted,

Richard L. Miller, Pro Se
1515 Arlington Ridge Road, #304
Arlington, Va. 22202
Phone: 202 365-1061
Email: rmiller707@yahoo.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD MILLER,

Plaintiff,                              *

                                        *    Case No. 06-01071 (GK)

v.                                      *

MARK V. ROSENKER, Chairman              *
NATIONAL TRANSPORTATION
SAFETY BOARD                            *

          Defendant.                    *

                                        *

*      *      *      *      *      *      *      *      *      *      *      *

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Now comes Plaintiff Richard Miller, pro se, through this memorandum of

law moves to oppose the Defendant's motion to dismiss, or in the alternative, for

summary judgment.

### MATERIAL FACTS IN DISPUTE

The Plaintiff takes issue with the following facts alleged in the Defendant's

Second Motion to Dismiss.

1. Dispute. By October 24, 2001, Plaintiff was not aware that he did not obtain

   the position of Budget Officer, GS-560-15, that was advertised on agency

   vacancy announcement WA-TB-1-055. See Miller Declaration.

2. Dispute. NTSB does not have employee EEO counselors. Instead, NTSB

   uses outside contractors to perform the services of EEO counseling. Guest

   Dec. p. 4. An employee who wishes EEO counseling must request a

   counselor through the EEO Director, Fara Guest at the NTSB. Guest is not

   an EEO counselor but it is her role to place an order for counseling services

upon the request of a NRSB employee.  Guest Dec. p. 5.  See Miller

Declaration

3.  Dispute.  Plaintiff first initiated contact with the EEO Director no earlier than

January 2, 2002.  See Guest Dec. p. 7.  See Miller Declaration.


## THE APPLICABLE LEGAL STANDARD

### A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM CANNOT SUCCEED IF THE COMPLAINT ON ITS FACE ALLEGES FACTS THAT IF PROVEN JUSTIFIES JUDICIAL RELIEF.

In *Carpenter v. County School Bd.*, 107 Fed. Appx., 351 (4th Cir. 2004),

the court stated:

> A motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that a plaintiff can prove no set of facts in support of a claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The factual allegations set forth in the complaint must be accepted as true, *Zinermon v. Burch*, 494 U.S. 113, 118, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990), and we must view those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). This court's inquiry on appeal is solely whether the "pleadings adequately state a set of facts which, if proven to be true, would entitle [the plaintiff] to judicial relief." *Duckworth v. State Admin. Bd. of Election Laws*, 332 F.3d 769, 772 (4th Cir. 2003).

In general, a motion to dismiss for failure to state a claim should not be

granted unless it appears certain that the plaintiff can prove no set of facts which

would support its claim and would entitle it to relief.  In considering a motion to

dismiss, the court should accept as true all well-pleaded allegations and should

view the complaint in a light most favorable to the plaintiff."  *CTI/DC, Inc. v.*

*Selective Ins. Co. of Am.*, 392 F.3d 114, 117-118 (4th Cir. 2004), *citing*, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

In the case at bar, Plaintiff has made a well plead allegation, and the complaint should not be dismissed, pursuant to 12(b)(6), for failure to state a claim.

### <u>A MOTION FOR SUMMARY JUDGMENT MUST BE DISMISSED IF THERE ARE GENUINE ISSUES OF MATERIAL FACTS OF CONSEQUENCE IN DISPUTE.</u>

Rule 56(c) of the Rules of the Court of Federal Claims provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Summary judgment is a drastic remedy which should be granted cautiously. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-2514 (1986) ("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment...").

On a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are" for the trier of fact. *Id.*, 477 U.S. at 249-255. Thus, competent and specific evidence by a single declarant may create a triable issue as to a material fact

although opposed by many other declarations to the contrary. *United States v. One Parcel of Real Property*, 904 F.2d 487, 491-92 (9th Cir. 1990).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255. "At the summary judgment stage, the nonmovant's version of any disputed issue of fact is presumed correct." *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 112 S.Ct. 2072 (1992). Even if the underlying facts are undisputed, if reasonable minds could differ on the inferences to be drawn from those facts, summary judgment should be denied. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970).

The United States Supreme Court has stated that summary judgment is appropriate only where the trier of fact determines that, given applicable substantive law, no genuine issue of material fact exists. *Liberty Lobby*, 477 U.S. 242, 255 (1986). An issue is "genuine" if the evidence is such that a reasonable fact-finder could find in favor of the non-moving party. *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir. 1988). In the context of an administrative proceeding under Title VII, summary judgment is appropriate if, after adequate investigation, one of the parties has failed to establish the essential elements of his/her case. *Spangle v. Valley Forge Sewer Authority*, 839 F.2d 171, 173 (3d Cir. 1988). In response to a motion for summary judgment, the trier of fact's function is *not to weigh the evidence* and render a determination as to the truth of the matter, but *only to determine* whether there exists a genuine factual dispute. *Anderson*, 477 U.S. at 248-49.

The courts have been clear that summary judgment is not to be used as a "trial by affidavit." *Redmand v. Warrener*, 516 F.2 766, 768 (1st Cir. 1975). Initially, it is the burden of the complainant to establish that there is some substance to his/her allegation of discrimination. In order to sustain this burden, the complainant must establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Furnco Construction Co. v. Waters*, 438 U.S. 567 (1978). This means that the complainant must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur.

Discrimination cases generally turn on circumstantial evidence. *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987), *cert. denied*, 484 U.S. 979 (1987). A presumption of discrimination arises when a prima facie case is established. This means that the complainant must present a body of evidence such that, were it not rebutted, the trier of fact ***could conclude that unlawful discrimination did occur.*** In the present case Complainant can establish a **prima facie** case of discrimination on the bases of age, gender and retaliation.

The Supreme Court has held that once the plaintiff establishes a prima facie case, the defendant must then produce evidence that it took the action for a legitimate, non-discriminatory reason. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). If the defendant fails to meet its burden, judgment must be entered in favor of the plaintiff as a matter of law. If the defendant is able to meet its burden, the plaintiff may show that the defendant's proffered reasons are pretextual. Once the factfinder finds that the proffered reasons are pretext, it

may find discrimination. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061 (3rd Cir. 1996)(en banc), *cert denied*, – U.S. –, 128 L.Ed.2d 1031 (1997). The factfinder need find only that the discriminatory or retaliatory motive was a substantial motivating factor to find that the employer is liable.

In order to prevail, Complainant must show that the agency's reasons for its actions were a pretext to mask discrimination, either because the agency more likely had a discriminatory motive, or because the stated reasons **lacked credibility**. In *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248 (1981)(emphasis added):

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. See Sweeney, supra, at 25. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. [450 U.S. 248, 255] To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the [450 U.S. 248, 256] plaintiff will have a *full and fair opportunity to demonstrate pretext*. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

The plaintiff retains the burden of persuasion. He now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of

persuading the court that he has been the victim of intentional discrimination. He may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *See McDonnell Douglas*, 411 U.S., at 804 -805."

This case should be not be dismissed as Complainant has established the *prima facie* elements necessary for his age, gender and reprisal claims, and as will be discussed below should be granted equitable tolling with regards to being one day late in his appeal.

## ARGUMENT

### THE PLAINTIFF WAS ACTING *PRO SE* AND SHOULD BE GRANTED EQUITABLE TOLLING

The Defendant alleges in his Motion to Dismiss that because of the procedural safeguards surrounding exhaustion of administrative remedies the Plaintiff should be barred from proceeding in this case.

The Plaintiff was acting pro se. A Pro Se litigant should be afforded extra opportunity to defend themselves.

The Title VII statute of limitations have been held to be, not a jurisdictional requirement; but rather a waivable requirement subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1983). Additionally, statutory time limits applicable to public employers are subject to equitable tolling. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990).

This court has held that the time to contact an EEO Counselor is subject to equitable tolling, and not jurisdictional. *Jarrell v. United States Postal Service*, 243 U.S. App. D.C. 350 (D.C. Cir. 1985). While the issue in this case is about the timeframe for filing an appeal, and not for contacting an EEO Counselor, the two are related and thus, the time for filing an appeal to the EEO should also subject to equitable tolling.

To be afforded the extra time to file through equitable tolling, Plaintiffs' must have "exercised due diligence, and the [Plaintiffs'] excuse must be more than a garden variety claim of excusable neglect. *Baker v. Henderson*, 150 F. Supp. 2d 17, 22 (D.D.C. 2001). Please see Miller Declaration.

### THE PLAINTIFF'S ALLEGATIONS OF AGE AND GENDER DISCRIMINATION ARE LIKE OR SIMILAR TO THE ALLEGATIONS OF REPRISAL MENTIONED IN THE FORMAL EEO COMPLAINT

The Defendant alleges that it is impermissible for the Plaintiff to claim age and/or gender discrimination in his District Court Complaint because he did not mention these allegations in his EEO Complaint.

While the Plaintiff does not argue with that analysis generally, the claims that the Plaintiff is claiming in his District Court Complaint are like and similarly related to his original retaliation claim. In the Plaintiff's formal EEO Complaint he alleged reprisal, based on prior protected EEO activity. The prior protected activity was complaints based on age and gender. Therefore, the Complaint currently before this court is proper. Please see Miller Declaration.

## CONCLUSION

For the foregoing reasons, Plaintiff requests the denial of Defendant's

Motion to Dismiss or, in the alternative for Summary Judgment.


**Respectfully Submitted**,

/s/

Richard L. Miller, Pro Se.
1515 S. Arlington Ridge Road, #304
Arlington, Virginia 22202
**202 365-1061**
**rmiller707@yahoo.com**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD MILLER,

        Plaintiff,

v.

MARK V. ROSENKER, Chairman
NATIONAL TRANSPORTATION
SAFETY BOARD

        Defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Case No. 06-01071 (GK)

## ORDER

**UPON CONSIDERATION** of the the Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment; It is hereby **ORDERED**:

That Defendant's Motion to Dismiss, or in the alternative for Summary Judgement is **DENIED**.

_____

US District Court Judge Kessler

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFF'S OPPOSITION

TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR

SUMMARY JUDGMENT and MEMORANDUM OF LAW IN SUPPORT OF

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN

THE ALTERNATIVE, FOR SUMMARY JUDGMENT and PROPOSED ORDER

were sent by regular mail to the representative at the US. Department of Justice.

Plaintiff has been approved for electronic filing but has not been assigned a

number/access.

Richard L. Miller, Pro Se

BRACEY DECLARATION

## DECLARATION OF GWENDOLYN E. BRACEY

To the best of my recollection, I had several discussions with Richard Miller during the time frame of April-December 2001 about his EEO contact/discussions with the NTSB EEO Director, Fara Guest, concerning several NTSB positions for which he applied and was not selected and other discussions on discrimination issues, e.g. the difficulty in getting an EEO counselor assigned to him. The NTSB positions included: Special Assistant Detail Non-Selection (2), Special Assistant (permanent) Non-Selection (2), several positions at the NTSB Training Academy Non-Selection, Budget Officer (Non-Selection), and Chief Financial Officer (Non-Selection).

According to my recollection, I declare that the foregoing is true and correct. Executed on November 15, 2007

Signed:

Gwendolyn E. Bracey
Retired NTSB Employee
2501 Artesian Lane
Bowie, MD 20716

CASEY DECLARATION

## DECLARATION OF CHARLOTTE CASEY

I, Charlotte Casey, had several discussions with Richard Miller during the time frame of April-December 2001 about his EEO contact/discussions with the NTSB EEO Director, Fara Guest, concerning several NTSB positions for which he applied and was not selected and their other discussions on discrimination issues, e.g. the difficulty in getting a counselor assigned to him. The NTSB positions included: 2 Special Assistants Detail Non-Selection, 2 Special Assistant (permanent) Non-Selection, several positions at the NTSB Training Academy Non-Selection, Budget Officer (Non-Selection), and Chief Financial Officer (Non-Selection).

I recall his particular disappointment and displeasure with being told he was not selected for both the Academy Position (supposedly position was advertised under another vacancy announcement unknown to him) and not qualifying for the Budget Officer's position. He believed both were discrimination and contacted the EEO Director in November, 2001.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on November 15, 2007

Signed: *Charlotte Casey*
Charlotte Casey
Former NTSB Director of Government &
Public Affairs
PO Box 152
New Castle, N. H. 03854

Miller Declaration

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD MILLER,

              Plaintiff,

v.

MARK V. ROSENKER, Chairman
NATIONAL TRANSPORTATION
SAFETY BOARD

              Defendant

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Case No. 06-01071 (GK)

## DECLARATION OF RICHARD L. MILLER

I, RICHARD L. MILLER, being of legal age and pursuant to the provisions of 28 U.S.C. S. 1746, declare as follows:

1. I have 16 years of high level budget work with the U. S. Department of Transportation, the Congressional Budget Office, and Financial Advisor to the Saudi Finance Minster (1974-1989). In addition I have 10 years of experience in budget/financial management of County Governments and a local lumber yard/building supply. I returned to Federal Service in June, 1999 as the TWA-800 Reconstruction Coordinator in Long Island, NY. In September, because of my previous Federal Service, State and Local, and private sector experience, I was asked by Chief Financial Officer (CFO) Craig Keller to return to Washington to set up the CitiBank Travel and Purchase Card Program. Exhibit 1: Resume

2. The Purchase Card Program was to replace NTSB's Rapid Draft Program. Within weeks of my return, NTSB Management and the FBI determined

that there were several abuses with the program, including several people writing checks to themselves, management writing bonus and advances to employees, etc. The Rapid Draft Statements were sent to the CFO office but were not even opened. The CFO was forced to resign and two people were jailed.

3. Through the Fall it became my job to set up the Travel and Purchase Card Program and to help bring financial accountability back to NTSB.

4. During this time, NTSB Managing Director Dan Campbell took over the management of the CFO Office.

5. In January 2000, Mitch Levine was appointed the new CFO and he soon appointed me to be on the CFO Management Team.

6. I continue my involvement with the TWA-800 Reconstruction and when it was decided that the TWA-800 Reconstruction should be moved to Washington and be the centerpiece of the new NTSB Academy, Chairman Jim Hall appointed me to the NTSB Training Academy Development. Team.

7. In June 2000, I was selected Financial Management Specialist but did not receive a Position Description until May 9, 2002. Exhibit 2: Position Description

8. Working closely with CFO Mitch Levine we instituted oversight and began to bring back financial accountability to NTSB. I was significantly involved, if not the lead on the numerous improvements listed in the attached letter to Congress: Cancellation of the Rapid Draft Program; Review of Internal

Controls (PWC); Implemented the Government Purchase Card Program; Entered into a Cross-Servicing Agreement with National Business Center; Entered into a Cross-Servicing Agreement with Bureau of Public Debt; Reimbursable Agreement with the Department of Transportation Inspector General; Heightened Senior Management Attention to Internal control Issues and Staff Augmentation and Resources. Exhibit 3: CFO Levine Write-up and Congressional Letter (Waxman copy only).

9. Levine saw some of the long-term problems of a system with little or no accountability and left at the end of 2000.

10. On CFO Levine's recommendation, I applied for the CFO position along with the Deputy CFO Director Don Libera. Exhibit 4: CFO Announcement and Application.

11. At the CFO off-site meeting with CFO Levine and thereafter we discuss that I would be good for a combination of functions of new positions, and thus saving the government substantial funds.

12. Neither of us was selected for the CFO position and a selectee from outside the agency, Steve Goldberg, was in March 2001.

13. It was about this time that Fara Guest was selected as the EEO Director. I began the discrimination discussion with Ms. Guest soon after her arrival. Exhibit 5: Announcement of Guest' Appointment. I first contacted Ms. Guest about my first complaint (Agency No. 100-AO-2011; EEOC Hearing No. 100-2003-0789X; EEOC Appeal No. 01A44745) after learning that I had not been selected for the CFO position. I do not recall the exact date

but am confident it was in early April. I continued to contact Ms. Guest on
further non-selections continuous discriminations as I was not being
interviewed or receiving any feedback from Human Resources on these
applications yet people were being moved into the advertised positions. (I
do not recall the exact dates and NTSB seized and will not let me have
access to my emails, note, or calendar, etc.)

14. During the summer and fall I continued to apply for positions, including 2
    Detail Special Assistants, 2 Permanent Special Assistants, Budget Officer
    and Operation Manager at the NTSB Academy. I continued to discuss
    with the EEO Director what seemed to be continuous pattern of
    discrimination. It was just too odd with my background not to even be
    interviewed or obtain any information on the filling of these positions while
    younger and/or non-males were interviewed/selected.    Exhibit 6: Budget
    Officer Announcement and Application.

15. Ms. Guest would listen to my discrimination disparate treatment claims but
    offered only discouragement. Her comment continued to be "things
    happen" and I shouldn't compare myself to others or their
    promotions/selections. As things came to light with the ROI, non-selection
    of the Academy position (although I had spent considerable time on the
    NTSB Academy Development Team), realizing a woman under 40 was
    selected as the Special Assistant Detail at the GS-14 level when she didn't
    even apply at the GS 14 level and then promoted soon thereafter and then
    this position became permanent, and with all my budget experience to not

even making the Qualifying List for the Budget Officer's, and my ROI
Affidavit Exhibit 7), I continued to push Ms. Guest to move forward. In
November, she finally agreed to request a contracted counselor.

16. Exhibit EEO Director Guest describes her responsibilities as (1) oversight
of the EEO complaint process and (2) issuance of final agency decisions.
(Guest Dec. 2)

17. Ms. Guest's description is very limited and should include at a minimum
counseling of NTSB employees and management on EEO issues.
Another unmentioned major responsibility is "acceptance" and
inturuputation of claimant's claims, both prior to contract counseling and
investigation. Ms. Guest, the counselor and the investigator changed my
initial claims substantially. See Guest Declaration 10 (I (she accepted
three claims); Guest Declaration 18 (she accepted 10 of Miller's reprisal
claims); Guest Declaration 27 (here, Ms. Guest changes the language and
only says "the following claims were accepted", but, it is Ms. Guest who
accepts).

18. The NTSB EEO Process is vague and meant to be that way. NTSB has
made no mention of either the EEO Process or provided any
documentation of the NTSB EEO Process. I and others have continued to
ask for documentation of the NTSB EEO Process and it was the first
question in the Discovery that NTSB would not provide. Ms. Guest
continually handed me a copy of the one-pager, Discrimination Complaint

Process (29 CFR 1614) as the documentation. Exhibit 8: Discrimination Complaint Process.

19. Defendant provides only a glimpse of the EEO Process in her statements of "my practice", "my standard practice" and "typically". (Guest Dec. 5 & 6).

20. Guest does inform us that the Agency does not employee EEO Counselor but, <u>as necessary,</u> uses outside contractors. (Guest Decl. 4)

21. Guest infers and has told Plaintiff that she does not keep notes of her meetings with plaintiffs. Exhibit 9 ---email from Guest.

22. There is conflicting information on which date is considered for first contact, and thus what is the date considered for the 45-day limit. Sometimes the 45-day limit is initial contact with Ms. Guest and sometimes it is the first meeting with the contracted counselor.

23. Ms. Guests also seems to have the ability to remove two positions (Special Assistant Detailees) from the EEO complaint during the Report of Investigation stage. Exhibit 10: Guest email

24. Ms. Guest authority over the counselor's report---- would ask the wrong questions to the wrong people; most of time I knew little more than before, or the counselor's or ROI was incomplete. Exhibit 11: Guest email.

25. Another major responsibility of Ms. Guest is whether, even after requesting an EEO Counselor, whether you are assigned one or not. In

this case, Ms. Guest never provided a Counselor (June 15, 2005). Exhibit 12: Miller email specifically requesting counselors for 5 positions.

26. The Guest declaration also states she is in charge of the oversight of the EEO Program. However, a Government Executive article of 4/22/02 says "Regulations requiring agencies to put ADR in place took effect in November, 1999." I couldn't seem to find out if NTSB had ADR or not. Exhibit 13 Article

27. NTSB is a small independent agency with about 400 people and several regional offices. Its workings and policy are controlled by NTSB Board Orders signed by the Managing Director (believed to be in effect until late 2005). In some cases, Ms. Guest seems to function both as the EEO Director and EEO Counselor. Exhibit 14: NTSB Board Order on EEO. with email from Paula Sind-Prunier, AFGE 2211 Union Official.

28. To add further confusing, Ms. Guest is **not following** the NTSB EEO Board Order; particularly by only offering the justification that it is "her practice".

29. Although Ms. Guest keeps no notes, Ms. Guest conveniently determines the January 2, 2002 by "backing into it. The date was "after January 1, 2002 because she requested a Requisition for Services on January 8, 2002. The Requisitions was dated January 14, 2002. Ms. Guest then states it is "my standard practice" to place the request within a few days of the employee contact. Then, the Financial Analyst "typically" within a day

or two to a week from the date of the employee's contact begins the informal complaint process. (Guest Decl. 5-8)

30. Please see self explanatory background of the "assumed" dates of January 14 and January 2.   Exhibit 15:  Emails and letter to Judge Brown.

31. Please see self explanatory email to Judge Brown on misleading information.  Exhibit 16:  Judge Brown

32. Ms. Guest states I filed the second reprisal complaint in November, 2002. (Guest Decl. 17).  Ms. Guest had Plaintiff rewrite his claim several times and finally accepted it in late March 2003.  Again, Ms. Guest made significant changes.

33. The Agency had these significant claims reduced to one issue---a small plaque.

34. Plaintiff contacted Ms. Guest on a third EEO complaint.  (Guest Decl. 22), including 03 Performance, Position Duties, Reassignment, Work Assignments, Computer, Non-Selections, Detail Opportunities, Warning Letter, Detailees, 03 Performance Questions, 04 Mid-Point, 04 Performance, and Purchase Card Transition.

35. Guest Decl, Attachment 4 states on November 17, 2004, Complainant contacted the Agency EEO Office and initiated an Equal Employment Opportunity (EEO Complaint).  Informal EEO Counseling was not successful in resolving the allegations Complainant raised, and the EEO Counselor issued Complainant a Notice of Right to File a Formal Discrimination Complaint dated March 16, 2005.

36. Knowing Plaintiff's medical condition, Plaintiff's supervisor placed Plaintiff on Performance Improvement Plan, June 9-August 9, with extension of two weeks due to supervisor being gone.

37. On August 10 Plaintiff sent email to Ms. Guest stating he had been by to see her but she hadn't been in.  Further, the email stated, "I am been sick and pressure with other job priorities and need an extension on your EEO request.

38. On September 12, 2005, Plaintiff's supervisor issued a Proposal to Remove---although the Agency's medical consultant agreed with Plaintiff on September 14, 2005 that a part-time schedule is needed and instructed agency to find out more about my medical conditions which they never did.

39. On September 16th email, "I request an extension on filing formal until my seized emails and other documentation are released and I have access to my office (Proposal to Remove from Service in 30 Days).  As I have been put on administrative leave and not allowed on the premises and don't have access to my work emails and documentation, please confirm that you received this email or call me (202 365-1061) and let me know of your decision.  Guest Decl, Attachment 4 states on September 19th, 2005 a hard copy of an email addressed from Complainant   to Guest was delivered to the Agency EEO office.  Hard copy states that Complainant is requesting "an extension of filing formal.  "In Complainant has provided no substantive reason for his failure to clarify his claims, and no indication

of when he may do so.  In Complainant's email that the undersigned received on September 19 (identified as email dated September 16th in attachments) , he merely states that because of a pending adverse action, he does not have access to work emails and documentation.  However, he provides no explanation of why his lack of access to work emails prevented him from complying with the request to clarify his claims of discrimination within the timeframes that I specified.

40.  On September 28th, Agency issued a Final Agency Decision, dismissing the case for failure to cooperate with the provisions of 29 CFR S 1614.107 (a) (7), because there is a clear record of delay on the part of the Complainant, and there is insufficient information on which to base an adjudication of the Complaint. (Guest Decl., Attachment 4, p. 31)

41. Ms. Guest makes no mention of these emails or the reality of the situation.

42. I have recently discovered the detailed information on this claim that I was working on Sept 12-13 when the Agency gave the Proposed Removal on September 12, 2005, forcing me to turn-in my NTSB ID, blocking my phone messages and seizing my emails, calendars.  NTSB allowed Plaintiff to go back to retrieve some information but he again was shown disparate treatment by little time and with 2-3 people inspecting what he could have.   Exhibit 16

43. According to Guest Decl. 25, Plaintiff filed a fourth complaint.  Again Ms. Guest changed Plaintiff submittal and the ROI was held over 180 days and Plaintiff had to finally obtain ROI through a FOIA request.  Dec 2006)

44. On the Workman's Compensation and Family Medical Leave Claims, Plaintiff is claiming discrimination and disparate treatment of the process. Exhibit 17

45. The Defendant's claim of the same issues is invalid. For example, the first EEO claims no Position Description while the second EEO claims that once Plaintiff finally received his Position Description, it was inaccurate and harmed Plaintiff to suffer harm as other younger employees benefited substantially.

46. Boles Declaration---Dated February 26, 2007, started May 28, 2006 long after most of these events;

47. Anh T. N. Bolles Declaration covers the Agency's Proposed Removal of September 12, 2005, Plaintiff's physician Dr. Joe Lamb, and the Workman's Compensation cases.

48. Concerning the Proposed Removal and the Plaintiff's medical issues, Ms. Bolles fails to mention: 1) September 14, 2005 letter from agency's own health consultant, Dr. Presant, that agreed that Plaintiff was disabled during the Performance Improvement Plan and Dr. Presant second letter in February further agreeing with Plaintiff; 2) Plaintiff's Oral and Written Response of October 21, 2005 which included several letters from Plaintiff's treating physicians, and the response to Don Libera's December request from three of Plaintiff's doctors; 3) Mr. Libera intentional delay from the October 21, 2005 oral written hearing until he was notified of

Plaintiff's return to work date—then Mr. Libera remove the Plaintiff from Federal Service effective one day prior to his return to work

49. Dr. Lamb's letter of October 4, 2005 (Bolles Decl 5) placed Plaintiff on sick leave due to the agency's actions, especially on Plaintiff attempting to obtain documents.

50. Plaintiff's supervisor first denied Plaintiff's request for Family Medical Leave (FMLA) to begin after Plaintiff had used all his sick, annual, and donated leave.   Then on December 9th, Plaintiff's supervisor placed Plaintiff on FMLA back to October 4 until the end of the year and thus using Plaintiff's 120 days.

51. Plaintiff filed a Workman's Comp (Bolles Decl. 6b) for occupational disease and a hearing is scheduled within the next month.

52. Plaintiff filed a Workman's Comp for injury that occurred July 28. 2004 (Bolles Decl. 6b) and the claim reconsideration is underway.

53. Plaintiff filed a Workman's Comp (Bolles Decl. 6c) accepted Plaintiff's claim in October, 2007.

54. Please see Exhibit for emails on discussion of CFO positions, including Budget Officer and present Budget Officer going part-time.  Exhibit 18

55. The Defendant has presented a "mask" of the NTSB EEO Process and in particular Plaintiffs EEO claims.  Plaintiff has provided significant documentation scanned and hopes that the courts will let this attempt by NTSB to "mask" the claims to be denied and allow the Plaintiff's claim to move forward and be heard by a jury of his peers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 18, 2007

Richard L. Miller
1515 Arlington Ridge Road, #304
Arlington, Virginia 22202

202 365-1071

Exhibits As Follow